DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Desire Littlejohn, appeals her conviction out of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On August 10, 2007, a secret indictment was filed, charging 23 individuals with various crimes. Predominately, Vera Strong was charged with one count of engaging in a pattern of corrupt activity, one count of theft in office, two counts of tampering with records, ten counts of petty theft, one count of attempted petty theft, and thirty counts of theft. Strong was an upper level agent in the Akron office of the Ohio Department of Taxation, with authority to enter adjustments to prior income tax filings. The charges against her arose out of her entering unsubstantiated adjustments into the computer system and causing the generation of illegitimate tax refund checks for family members and friends. *Page 2 
 {¶ 3} In the joint indictment, Littlejohn was charged with one count of theft in violation of R.C. 2913.02(A)(3), a felony of the fifth degree, and one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. The charges against her arose out of her receipt and use of a $700.00 unsubstantiated tax refund check. At arraignment, Littlejohn stood mute and the trial court entered a technical plea of not guilty on her behalf.
 {¶ 4} On February 20, 2008, Littlejohn executed a waiver of trial by jury, electing instead to be tried by the judge. The matter proceeded to a bench trial in regard to Littlejohn and three other defendants. At the conclusion of the State's case in chief, all defendants moved for judgment of acquittal pursuant to Crim. R. 29. The trial court granted the motion in regard to the other three defendants, but denied it as to Littlejohn. Littlejohn presented her case in chief. At the conclusion of the trial, the court found Littlejohn not guilty of theft, but guilty of receiving stolen property. The trial court sentenced her to 6 months in jail but suspended the incarceration on the condition that she successfully complete two years on community control and serve thirty days in Oriana House. Littlejohn timely appealed, raising two assignments of error for review. This Court consolidates the assignments of error to facilitate review.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT LITTLEJOHN'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIM.R. 29."
 ASSIGNMENT OF ERROR II "DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} Littlejohn argues that the trial court erred in overruling her motion for judgment of acquittal pursuant to Crim. R. 29 because the State presented insufficient evidence to support *Page 3 
the charge of receiving stolen property. Littlejohn further argues that her conviction is against the manifest weight of the evidence. This Court disagrees.
 {¶ 6} Crim. R. 29 provides, in relevant part:
 "(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 7} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.State v. Jenks (1991), 61 Ohio St.3d 259, 279.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 8} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather, *Page 4 
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. Thompkins, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a `thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." State v. Tucker, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶ 5.
This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. Thompkins, 78 Ohio St.3d at 387.
 {¶ 9} This Court has stated that "sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 10} Littlejohn was charged with receiving stolen property in violation of R.C. 2913.51(A), which states that "[n]o person shall receive, retain or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 11} At trial, Vera Strong testified that she was one of very few tax agents with the authority to override the dollar amounts of tax refund checks being generated. She admitted that she facilitated many unsubstantiated tax refunds for family members and friends, generally in exchange for a cash payment after the recipient cashed the refund check. Strong testified that *Page 5 
she was able to monitor the generation, receipt and cashing of the unsubstantiated refunds; and also that she would contact the recipients accordingly.
 {¶ 12} Strong testified that she had met Littlejohn five or six times during her life and that she knew her through Littlejohn's father, Andre Smith. Strong testified that Smith told her that his daughter was having financial troubles, and she agreed to "help [Littlejohn] out by making an adjustment" to her tax filing. Strong testified that she later spoke with Littlejohn about the adjustment and told her to bring her W-2 to Strong's home. Strong also testified that, because Littlejohn had not yet filed her original state income tax return for 2005, she prepared and submitted the original return for Littlejohn, signing Littlejohn's name as the two had discussed. Strong testified that Littlejohn was legitimately entitled to a $37.00 refund for tax year 2005 based on her W-2.
 {¶ 13} Strong testified that, several days after Littlejohn's original tax return was filed, Strong made an adjustment to the return electronically using her authorization code. She testified that she adjusted Littlejohn's state withholding from $37.00 to $737.00, causing the generation of an additional refund check to Littlejohn in the amount of $700.00. Strong testified that she had told Littlejohn that she would make the adjustment to allow Littlejohn to receive the additional refund in exchange for a $50.00 payment. Strong testified that there was no legitimate justification for the adjustment she made to Littlejohn's return.
 {¶ 14} Strong testified that she monitored the generation and receipt of the additional refund. After she noticed in the computer system that Littlejohn had cashed the $700.00 check on December 24, 2006, she attempted to contact her to obtain the agreed-upon payment. After a couple unsuccessful attempts to contact Littlejohn, Strong testified that she contacted Andre Smith who told her that his daughter had not received the $700.00 refund check. Strong testified *Page 6 
that, because she knew Littlejohn had cashed the check and she was angry that Littlejohn had not made the agreed payment, she reversed Littlejohn's additional refund in the computer system and caused a bill to Littlejohn in the amount of $700.00 to be generated. Strong admitted that she reversed Littlejohn's $700.00 refund to scare her. She testified that she again entered the system and reauthorized Littlejohn's $700.00 refund.
 {¶ 15} William Cort, Jr., of the Ohio Department of Taxation in Akron testified that he was involved in an internal investigation regarding Vera Strong and that he assisted law enforcement by gathering documents for use in their investigation. He testified that he pulled information relevant to the investigation and turned it over to Trooper Wells of the Ohio State Highway Patrol. Some of that information concerned Littlejohn's tax filings and Strong's involvement with Littlejohn.
 {¶ 16} When the State later recalled Mr. Cort, he testified that taxpayer calls to the Department of Taxation service center are only saved in the system for sixty days. He testified that by the time he realized he should have captured Littlejohn's calls to the department's service center, those recordings had been deleted in the normal course of business.
 {¶ 17} Donna Henson of the Ohio Department of Taxation testified that she worked at the Taxpayer Service Center, fielding taxpayer inquiries by phone, at the time relevant to Littlejohn's receipt of a bill for $700.00 from the Ohio Department of Taxation. Ms. Henson testified that the conversations with taxpayers were recorded and maintained for a period of time and that she always took notes on all conversations, which notes were identified by her personal code. She identified notes she took during two phone calls made to her by Littlejohn.
 {¶ 18} Ms. Henson testified that Littlejohn called the service center on January 9, 2007, regarding a tax bill for $700.00 that she had recently received. Ms. Henson testified that she told *Page 7 
Littlejohn not to cash the $700.00 check sent to her because the department was canceling the check as it had been issued in error, and she would have to repay the money, plus interest. She testified that she emailed another employee, requesting cancellation of the check. Ms. Henson testified that Littlejohn told her that she had neither received nor cashed a check for $700.00 from the Ohio Department of Taxation. Ms. Henson testified that she received confirmation the next day that Littlejohn had in fact cashed the $700.00 check on December 24, 2006.
 {¶ 19} Ms. Henson testified that Littlejohn again called the service center on January 16, 2007. She testified that she informed Littlejohn that she knew the $700.00 check had been cashed. She testified that Littlejohn requested to speak to a supervisor but that Littlejohn hung up before Ms. Henson could bring a supervisor to the line.
 {¶ 20} Stephanie Wyskocil of the Ohio Department of Taxation testified that she also has worked at the department's phone service center. She testified that she believed that recordings of phone calls are only kept between 90 and 120 days before they are deleted.
 {¶ 21} Trooper Richard Wells of the Ohio State Highway Patrol testified that the Highway Patrol is charged with investigating any criminal activity that takes place on state owned or leased property. He testified that he investigated the fraudulent adjustments made by Vera Strong. He testified that he interviewed Littlejohn in connection with that investigation because she had received a fraudulent refund.
 {¶ 22} Trooper Wells testified that he interviewed Littlejohn on April 4, 2007. He testified that she told him that she met with Strong regarding tax preparation and Strong told her that she could make adjustments to her taxes and get Littlejohn an additional tax refund. He testified that Littlejohn told him that she provided Strong with her personal and state income tax information and that Strong told Littlejohn she would charge her $150.00 to make the additional *Page 8 
adjustments. Trooper Wells testified that Littlejohn admitted to him that she cashed the $700.00 tax refund check but did not pay Strong because she believed that Strong should not charge for making adjustments to tax filings. Trooper Wells produced a copy of the $700.00 check cashed by Littlejohn. He believed that he showed her a copy of the cashed check.
 {¶ 23} Trooper Wells testified that Littlejohn denied having any conversations with anyone at the Department of Taxation regarding the $700.00 tax refund check. He testified that he told her that the check had been issued in error and that she must repay it with interest. He testified that she denied that anyone at the Department of Taxation told her that. He testified, however, that his investigation showed that Littlejohn called the Department of Taxation after she received an audit letter generated through Strong's actions and sent by the department. Trooper Wells testified that Strong caused the generation of the audit letter to Littlejohn after Littlejohn failed to pay Strong for the adjustments she had made to Littlejohn's tax filing which fraudulently indicated her entitlement to the additional $700.00 refund.
 {¶ 24} Littlejohn testified in her own defense. She testified that she spoke with Strong's husband who told her that Strong prepared tax filings. She testified that she gave her phone number to Strong's husband and that Strong later called her regarding tax preparation. Littlejohn testified that in late November 2006, she brought her W-2 for 2005 to Strong's house and left. She testified that she did not sign a tax return for Strong. She further testified that she was not aware that Strong was engaging in illegal activity by facilitating unauthorized tax refunds for others.
 {¶ 25} Littlejohn testified that she did not hear from Strong again until January 2007, when Strong demanded $150.00. She testified that she thought that was too much money and that she told Strong she would contact her later. Littlejohn testified that Strong continued to call *Page 9 
her and had other people call her too. She could not identify any of those people by name, gender or otherwise.
 {¶ 26} Littlejohn admitted receiving the $700.00 tax refund check and cashing it on December 24, 2006. She admitted spending the money on Christmas presents for her son. She testified that she received a tax audit letter in January 2007, and she admitted that she called the Department of Taxation and spoke with Donna Henson. She testified that she asked to speak with a supervisor when Henson "was more so questioning me than listening to me." Littlejohn testified that she mentioned Vera Strong by name to Henson. She denied hanging up before Henson could get a supervisor on the line.
 {¶ 27} Littlejohn testified that Trooper Wells contacted her and that she met with him for an interview in April 2007. She testified that she admitted to Trooper Wells that she cashed the $700.00 tax refund check. She testified, however, that she did not remember ever receiving the initial $37.00 tax refund check. She further testified that she could neither remember nor generally estimate how much money she made in 2005. Finally, Littlejohn admitted that she has a prior theft conviction from 2003.
 {¶ 28} Although there was some conflicting evidence in this case, this Court will not disturb the trial court's factual determinations because the trier of fact is in the best position to determine the credibility of the witnesses during trial. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. In addition, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. Id.
 {¶ 29} This is not the exceptional case, where the evidence weighs heavily in favor of Littlejohn. The weight of the evidence supports the conclusion that Littlejohn received the *Page 10 
$700.00 tax refund check, cashed it and spent it on gifts for her son, knowing or having reasonable cause to believe that it was obtained through the commission of a theft offense. She testified that she always had someone prepare her tax returns. She admitted that she brought her W-2 for tax year 2005 to Vera Strong, a family friend, so that Strong could prepare her 2005 return. Littlejohn admitted that Strong told her that she could also make adjustments to the original filing to get her an additional refund. Strong admitted that she had been making unsubstantiated adjustments for family and friends to help them out financially.
 {¶ 30} Although she denied receiving a $37.00 tax refund after filing her initial 2005 tax return, the taxpayer return summary admitted into evidence indicates that Littlejohn received and cashed that check. A couple weeks after she received and cashed the $37.00 check, Littlejohn received and cashed the second refund check for an additional $700.00. Although she personally provided her 2005 W-2 to Strong, she could not even estimate how much money she made that year.
 {¶ 31} A thorough review of the record compels this Court to find no indication that the trier of fact lost its way and committed a manifest miscarriage of justice in convicting Littlejohn of receiving stolen property. Littlejohn's conviction is not against the manifest weight of the evidence. Because her conviction is not against the manifest weight of the evidence, there necessarily was sufficient evidence to support the trial court's verdict. Littlejohn's first and second assignments of error are overruled.
 III. {¶ 32} Littlejohn's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
 Judgment affirmed. *Page 11 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 SLABY, J. MOORE, J. CONCUR *Page 1