DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant Jennifer Tucker appeals from the decision of the Wadsworth Municipal Court finding her guilty of domestic violence and sentencing her to 180 days in the Medina County Jail. We affirm.
 {¶ 2} On November 28, 2005, a Complaint was filed in the Wadsworth Municipal Court charging Defendant with domestic violence. The charges arose from an altercation that occurred between Defendant and her husband, Scott Smith ("Smith"), in the early morning hours of November 27, 2005. A jury found Defendant guilty after a one-day trial on February 16, 2006. On April 5, 2006, the judge sentenced Defendant to 180 days in the Medina County Jail and imposed a fine of $250. The court suspended all but 60 days of the sentence, which was later stayed pending appeal. Defendant has timely appealed and raises one assignment of error:
 ASSIGNMENT OF ERROR "[Defendant's] domestic violence conviction is against the manifest weight of the evidence, where [Defendant] established by a preponderance of the evidence that she was acting in self-defense in her own apartment against an aggressor-spouse who actively prevented her from retreating to outside their apartment."
 {¶ 3} Defendant argues that her conviction was against the manifest weight of the evidence because she established during the trial, by a preponderance of the evidence, that she was acting in self defense. Defendant does not challenge the evidence supporting the elements of the alleged offense, but instead argues that she proved that she acted in self-defense.
 {¶ 4} "A defendant who asserts the affirmative defense of self-defense has the burden of proving the matter by a preponderance of the evidence." State v. Conwell (Apr. 12, 2000), 9th Dist. No. 19482, at *2, citing State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, syllabus, affirmed (1987), 480 U.S. 228. See, also, R.C. 2901.05(A). In order for a defendant to establish self-defense, he must prove the following elements: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger. See State v. Robbins (1979), 58 Ohio St.2d 74,388 N.E.2d 755, paragraph two of the syllabus. A person has no duty to retreat when he is in his own home. State v. Fox (1987),36 Ohio App.3d 78, 520 N.E.2d 1390, paragraph two of the syllabus.
 {¶ 5} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.
Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. Id. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Otten, at 340.
 {¶ 6} The facts of this case, as presented during the trial, demonstrated that a struggle had occurred between Defendant and Smith after Defendant had spent much of the evening with a male friend who was visiting from out of state. Defendant returned home about 2:00 in the morning. The atmosphere was tense, and Smith, who had been drinking for most of the afternoon and evening, continued to drink and refused to talk to Defendant. She responded by gathering a bag of clothes and telling Smith that she was unhappy with the tension in the apartment and was planning to leave the apartment for the night.
 {¶ 7} At this point, the stories diverged. Most of Smith's story was gleaned from a written statement he had made at the police station several hours after this altercation. At the time of Defendant's trial, Smith had already been charged in this incident and was not forthcoming in his testimony on the stand during Defendant's trial. He did acknowledge that the written statement offered by the prosecution was his, and that he hoped he had been telling the truth when he wrote it, but that he could not remember any of the details because he had been drunk at the time. The statement essentially said that Defendant had come home drunk, and that she had announced she was leaving to be with her friend. He attempted to stop her from leaving and she threw the beers she was carrying against the wall. She repeatedly punched him in the face and grabbed his testicles. She then went out the back door. He denied having hit her in the face, but he did admit that he had shoved her to the floor.
 {¶ 8} Defendant's testimony was much more extensive. She argued that she had not been drunk when she came home, but that Smith had been. He became angry when she tried to leave the house again and grabbed both the bag of clothes and Defendant's cell phone out of her hands, and accused her of trying to leave to "cheat on him" with her friend. Defendant testified that at that point, she sat on the couch and waited for Smith to calm down. Smith took his wedding ring off of his finger and tried to saw it in half with a steak knife while announcing that he would not remain married to someone who wanted to cheat on him.
 {¶ 9} Defendant tried to leave again, and this time Smith began pushing her and physically keeping her away from the door. According to her testimony, at one point he shoved her so that she fell over the love seat or coffee table, and when she looked up, she saw him standing over her with a steak knife. He then began to cut his chest and arms with the knife. He told her that he planned to call the police and tell them that she had cut him so that she would go to jail. As he went to get his cell phone, she ran to the back of the apartment and out the sliding glass door, climbing over the balcony to a neighbor's apartment, where she called the police.
 {¶ 10} The only witness for the defense other than the Defendant was a neighbor in Defendant's apartment complex, Matthew Pluscotta ("Pluscotta"). During the altercation, Pluscotta, who had heard Defendant yelling for help, came to the front door of Defendant's apartment and knocked. When Smith opened the door to him, Pluscotta noticed that Smith was covered with blood on his chest and arms as well as on his face. Pluscotta tried to see into the apartment but could not see Defendant anywhere. At no time was he able to see what was happening in the apartment.
 {¶ 11} The police arrived within five to ten minutes of Defendant's having left the apartment. Although three officers responded, only one testified. Patrolman Sipos ("Sipos") went directly to the apartment and saw Smith standing near the door. He had blood all over his face and hands and scratches on his chest and arms. He told Sipos that there had been a fight, and that the scratches on his chest and arms were self-inflicted. Sipos then saw that Smith had blood in his nose and a cut lip. Smith said Defendant had caused these facial injuries. This was consistent with the written statement he provided to police at the Wadsworth Police Station.
 {¶ 12} When Sipos found Defendant, she initially contended that Smith himself had caused all of his injuries. Sipos informed Defendant that Smith had a bloody nose and cut lip, and Defendant argued that she had hit him in the face in self-defense. The jury saw pictures both of Smith's injuries and of Defendant, whose eyelid began turning purple as the police interviewed her.
 {¶ 13} While Defendant did sustain some injuries during the altercation, the stories differed about what caused both Smith's and Defendant's injuries. Given the conflicting testimony in this case, the jury could have concluded that Defendant was not acting in self defense. At very least, the jury could have concluded that Defendant had not proven that she was not at fault in this situation, since there was conflicting testimony about who had instigated the disagreement. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Royston (Dec. 15, 1999), 9th Dist. No. 19182, at *5, quoting State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. As it is well established that the appellate court should only invoke the discretionary power when the evidence presented weighs heavily in favor of the defendant, we decline to exercise that discretion in this case, as the evidence could reasonably be found to weigh against Defendant.
 {¶ 14} We find that the jury's verdict was not against the manifest weight of the evidence, and that the jury could reasonably have concluded that Defendant did not carry her burden of proving self-defense by a preponderance of the evidence.
 {¶ 15} Defendant's assignment of error is overruled. We affirm the decision of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
MOORE, J. BOYLE, J. CONCUR