DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, James Miller, appeals his conviction out of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On July 27, 2006, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1)/(2), a felony of the second degree. The matter proceeded to trial before a jury, which found appellant guilty of the charged offense. The trial court sentenced appellant to three years in prison. Appellant timely appeals, asserting one assignment of error for review.
 II. *Page 2 ASSIGNMENT OF ERROR
"DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} While he does not challenge the evidence supporting the elements of felonious assault, appellant argues that his conviction was against the weight of the evidence because he proved self-defense by a preponderance of the evidence. This Court disagrees.
 {¶ 4} Appellant had the burden of proving the affirmative defense of self-defense by a preponderance of the evidence. State v. Tucker, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶ 4. In order to prevail on his defense of self-defense, appellant had to show that (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) he must not have violated any duty to retreat or avoid the danger. Id., citing State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. The State conceded at trial that appellant had no duty to retreat in his own home.
 "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, paragraph one of the syllabus. *Page 3 
 "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a `thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Otten, 33 Ohio App.3d at 340." Tucker at ¶ 5.
This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. Thompkins, 78 Ohio St.3d at 387.
 {¶ 5} At trial, Detective David Hayes of the Akron Police Department ("APD") testified that he was called to investigate a stabbing. He testified that he was told that the perpetrator claimed to have stabbed somebody in self-defense as the person was breaking into his apartment. Detective Hayes testified that he took approximately 72 photographs of the scene, and that the photographs show no signs of tampering in regard to the windows and door, and no signs of forced entry. He testified that the window sills were covered with dirt which had not been touched. He testified that, had someone climbed through the window, there certainly would have been marks on the sill.
 {¶ 6} Detective Hayes testified that there were drops of blood on the couch and rug in the living room, while there was "plenty of blood" on the kitchen floor. He testified that it looked like someone had attempted to clean up the blood from the kitchen floor and sink. He testified, however, that there was no blood on the walls near the windows or on the window blinds or shades. *Page 4 
 {¶ 7} Detective Hayes testified that he concluded that the victim, Jim McCullen, was cut in the living room based on where the police found bent and broken knife blades and numerous drops of blood. He testified that, based on the blood trail, he believed the victim traveled through the kitchen, down the apartment steps, around the back of the house and to the sidewalk where the victim was sitting when police arrived.
 {¶ 8} Officer Brian Cresswell of the APD testified that he and his partner heard a dispatch to car 2 to respond to a stabbing at 66 West Tallmadge. He testified that, because his patrol car was nearby, he and his partner also responded. Officer Cresswell testified that earlier in the evening he stopped someone who appeared to be a black female with blond hair and wearing a leopard skin dress. He testified that the person appeared to be flagging down cars on Tallmadge Avenue in an area known for high incidents of prostitution. He testified that appellant James Miller was the person he earlier stopped. Officer Cresswell testified that he told appellant that he would arrest him as part of a prostitution investigation if he saw him flagging down cars again. The police then allowed appellant to leave.
 {¶ 9} Officer Cresswell testified that he later arrived at the scene of the reported stabbing. He testified that a female, Kenya Wyche, and the victim Mr. McCullen were on the street. He testified that Mr. McCullen was yelling and screaming that "he-she" had stabbed him. The officer testified that blood was *Page 5 
pouring from Mr. McCullen's hand. The officer identified appellant as the "he-she" identified by Mr. McCullen.
 {¶ 10} Officer Cresswell testified that he questioned appellant in his police car. He testified that appellant was still wearing the leopard skin dress in which the officer had earlier observed him. He testified that appellant neither appeared to have any injuries nor complained of any injuries. The officer testified that appellant first told him that he was the victim of a burglary and that he stabbed an arm coming through his window in self-defense. Officer Cresswell testified, however, that he did not see any signs of any window being up or open, or any knife marks on the blinds.
 {¶ 11} Officer Cresswell testified that during the course of the investigation he learned that appellant, Mr. McCullen and Ms. Wyche had all been inside appellant's apartment and that there were no signs of any break-in. He testified that he then believed that appellant had been lying to him, so he placed him under arrest and read him hisMiranda rights. The officer testified that appellant became very upset and was "bawling." He testified that appellant then apologized for lying and stated that there was no break-in or burglary. He testified that appellant said that Mr. McCullen, Ms Wyche and he had been smoking crack and drinking beer in his apartment. He testified that appellant told him that he got mad because Mr. McCullen was "hitting on" Ms. Wyche and "he was not going to have that in his apartment," so he stabbed Mr. McCullen in the hand. The officer testified that *Page 6 
appellant asserted, "I'm just doing what's right, and I don't care, I will do it five times again." Officer Cresswell testified that appellant assumed a triumphant air, "that he was standing up for what he thought was the right thing, and that's why he did what he did." The police understood as a result of the investigation that appellant had stabbed Mr. McCullen in jealousy, because he was paying more attention to Ms. Wyche than to appellant.
 {¶ 12} Officer Cresswell testified that the second version of the events which appellant gave in the police car after having been read hisMiranda rights was consistent with the statements of Mr. McCullen and Ms. Wyche, except that McCullen and Wyche asserted that the three had only been drinking beer, not smoking crack. He testified that he has participated in thousands of drug arrests and that he is familiar with the distinctive smell of crack cocaine. He testified that he did not smell any crack cocaine when he entered appellant's apartment during his investigation of the stabbing incident. The officer further testified that he saw no drug paraphernalia and that he had never heard of anyone smoking crack off of a knife, as appellant alleged the three were doing.
 {¶ 13} Officer Cresswell testified that appellant was transported to the Summit County jail. He testified that the jail will not accept injured prisoners; rather, they must be transported to a medical facility for treatment prior to booking at the jail. The officer testified that appellant was not transported to any medical facility prior to the jail, because appellant had no injuries. *Page 7 
 {¶ 14} Officer Justin Morris of the APD testified that he responded with his partner Officer Cresswell to investigate a reported stabbing at 66 West Tallmadge Avenue. He testified that, upon arriving at the scene, he saw Mr. McCullen standing on the sidewalk and bleeding heavily from his hand. He testified that he took a statement from Mr. McCullen, while Ms. Wyche stood nearby yelling that appellant had stabbed Mr. McCullen. Officer Morris testified that Mr. McCullen was also yelling at appellant, screaming, "I can't believe you stabbed me." The officer testified that both Mr. McCullen's and Ms. Wyche's statements were consistent with one another.
 {¶ 15} Officer Morris testified that, while he did not search Mr. McCullen, he did not observe any criminal tools in his possession. He testified that Mr. McCullen did not have anything in his hands, did not have a mask or other face covering, and was not dressed all in black as one might expect of a burglar.
 {¶ 16} Officer Morris testified that he observed the only windows accessible to appellant's apartment. He testified that they were secure, unbroken, and did not have any blood around them. He added that it did not appear as though anyone had forced entry into the apartment through the windows. The officer testified that the fact that the blinds in one window were misaligned, specifically raised approximately 6 inches on one side, did not make him believe that someone had attempted to enter through the window. Instead, he testified that he believed that someone could have been looking out through the window. *Page 8 
 {¶ 17} Officer Morris testified that when he took appellant out of the patrol car and placed him in the paddy wagon for transport to the jail, he did not observe any injuries on appellant. Specifically, he testified that he did not observe any bruising or discolored skin on appellant. He testified that appellant, in his statement given after having received his Miranda rights, never complained to him of any injuries, and never claimed to have been the victim of an assault.
 {¶ 18} Officer Morris testified that, based on the investigation, he believed that Mr. McCullen had been stabbed while near the couch in the living room.
 {¶ 19} Appellant testified in his own defense. He testified that he is a transsexual, and that he has known himself to be gay since the age of five. He testified that he regards himself as a female.
 {¶ 20} Appellant testified that on the evening of July 16, 2006, he was preparing to host a Barbies collector party in his home at 66 West Tallmadge Avenue. He testified that his friends arrived around 8:00 p.m. and that Kenya Wyche knocked on his door at 8:05 p.m. He testified that he let her into his home, and that she stayed until the party ended at 10:30 p.m. Appellant testified that Ms. Wyche returned to his apartment around 11:30 p.m., and that they talked.
 {¶ 21} Appellant testified that he received a phone call from a friend around the same time. He testified that his friend asked him to bring over some cigarettes, so he got some money from his bedroom, made Ms. Wyche leave, and he left. Appellant testified that he locked the doors to his apartment. After spending some *Page 9 
time with his friend, appellant testified that the police stopped him on the street and dismissed him after seeing his identification card.
 {¶ 22} Appellant testified that he then returned home to find Mr. McCullen and Ms. Wyche in his home, naked and smoking crack. He testified that he was very disturbed by the scene, and that Ms. Wyche told him that she crawled through a side window to enter the apartment. Appellant testified that when he approached Ms. Wyche to discuss the matter, Mr. McCullen jumped up and begin brutally hitting him in the face as many as four times. He testified that he backed into the kitchen, as Mr. McCullen continued to hit him. Appellant testified that Mr. McCullen still had the knife he was using to smoke crack in his hand, and appellant believed that McCullen would stab him. Appellant testified that he then picked up a steak knife and "jabbed" McCullen with it. He testified that Mr. McCullen then ran back into the living room, put on his trousers and ran outside. Appellant testified that he then called 911.
 {¶ 23} Appellant testified that he went outside, where Mr. McCullen was calling him names and threatening to kill him. He testified that Ms. Wyche ran up to one of the police officers and stated that appellant had stabbed Mr. McCullen. Appellant testified that the police then "jacked [his] arm up" and pushed him into the cruiser, refusing to listen to appellant's version of the events.
 {¶ 24} Appellant testified that when he left his apartment to bring cigarettes to his friend, there were no smudge marks on his window ledge, and his window *Page 10 
blinds were not askew. He denied that he told the police that he stabbed Mr. McCullen as he was coming through the window. He also denied having made any confession to the police or asserting that he had stabbed the victim out of jealousy.
 {¶ 25} Although there was some conflicting evidence in this case, this Court will not disturb the jury's factual determinations because the jury is in the best position to determine the credibility of the witnesses during trial. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. In addition, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the jury chose to believe certain witness' testimony over the testimony of others. Id.
 {¶ 26} After a thorough review of the record, this Court cannot find that the jury lost its way and committed a manifest miscarriage of justice when it rejected appellant's assertion that he acted in self-defense. This is not the exceptional case where the evidence presented weighs heavily in favor of the defendant and against conviction. The evidence supports the jury's finding that appellant was not defending himself when he stabbed Mr. McCullen. The police testified that they found no evidence that anyone had broken into appellant's apartment. The police further testified that appellant confessed to having stabbed Mr. McCullen in a fit of jealousy, rather than while defending himself. Accordingly, this Court finds *Page 11 
that appellant's conviction is not against the manifest weight of the evidence. Appellant's assignment of error is overruled.
 III. {¶ 27} Appellant's assignment of error is overruled. Appellant's conviction out of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to appellant. *Page 12 
 SLABY, P. J. WHITMORE, J. CONCUR *Page 1