[Cite as *State v. Belka*, 2011-Ohio-3247.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 09CA0084-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSEPH M. BELKA | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 09CR0113 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2011

CARR, Judge.

{¶1} Appellant, Joseph M. Belka, appeals his conviction out of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} This case stems from an incident that occurred on December 12, 2008, which led to Belka's arrest. On March 18, 2009, Belka was indicted on one count of possession of cocaine, a Schedule II substance, in violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree, with a forfeiture specification as to Mr. Belka's motor vehicle, in violation of R.C. 2941.1417 and R.C. 2981.04(A)(1). The trial court appointed counsel to represent Belka, who pleaded not guilty to the charges.

{¶3} The matter proceeded to trial before the jury. At the conclusion of the State's evidence, Belka made an oral motion for acquittal and an oral motion to dismiss the case. The trial court denied the motions. Belka did not put on a defense. Belka renewed his motions. The

trial court denied the motions again. The jury returned a verdict of guilty on the charge of possession of cocaine. The trial court sentenced Belka on September 28, 2009, to ten months in prison with credit for seventy-three days served and suspension of Belka's driver's license for six months beginning April 20, 2009, and ending October 20, 2009. On October 1, 2009, the trial court granted the State's oral motion to dismiss the forfeiture specification.

{¶4} On November 2, 2009, the trial court granted trial counsel's oral motion to withdraw, and appointed different appellate counsel. On November 19, 2009, Belka moved this Court for leave to file a delayed appeal, which this Court granted on July 2, 2010. Belka filed a timely appeal, raising one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

"THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT, AND APPELLANT'S CONVICTION FOR POSSESSION OF COCAINE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶5} Belka argues that his conviction for possession of cocaine was not supported by sufficient evidence and was against the manifest weight of the evidence. This Court disagrees.

{¶6} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether

the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 279.

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.

{¶7} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

> "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶8} Belka was charged with possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a) which states, in relevant part:

> "No person shall knowingly obtain, possess, or use a controlled substance. *** If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is

guilty of possession of cocaine. *** [P]ossession of cocaine is a felony of the fifth degree ***."

**{¶9}** R.C. 2901.22(B) states:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

**{¶10}** "Controlled substance" is defined as "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." R.C. 3719.01(C).

**{¶11}** "Possess" or "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession can be either actual or constructive. See *State v. Wolery* (1976), 46 Ohio St.2d 316, 329. Actual possession requires ownership or physical control. *State v. Messer* (1995), 107 Ohio App.3d 51, 56. An individual has constructive possession of an object when he exercises dominion and control over the object. *Wolery*, 46 Ohio St.2d at 329. "[R]eady availability of the item and close proximity to it support a finding of constructive possession." *State v. Lamb*, 9th Dist. No. 23418, 2007-Ohio-5107, at ¶12.

### Sufficiency of the evidence

**{¶12}** Belka argues that there was insufficient evidence to establish that he knowingly had actual or constructive possession of the pipe found underneath the front passenger seat of the vehicle he was in.

**{¶13}** At trial, Officer Mike Cindia testified that on December 12, 2008, he was called out to Discount Drug Mart in Wadsworth to locate Joseph Belka. He had his drug

dog with him. He testified that he pulled in behind Mr. Daniel Goble's vehicle, turned on his lights, and then radioed in the pertinent information before approaching the vehicle. He identified Joseph Belka as the front seat passenger and Mr. Goble as the driver. He testified that John Belka was in the back seat located more directly behind the driver. He testified that the three occupants were removed from the vehicle at the same time once backup arrived.

{¶14} Officer Cindia testified that he maintained the best visual he could on the occupants in the vehicle once he spotted the vehicle in the parking lot. He testified that he did not see any obvious movement from any of the vehicle's occupants. He testified that it would take an obvious, significant movement from somebody in the back seat to place something underneath the front passenger seat. However, he testified that a front seat passenger in this case could easily "conceal that type of movement" without raising any indication of what he was doing.

{¶15} Officer Cindia testified that the vehicle was "pretty clean." He testified that he searched the driver's side and found two boxes of Sudafed that Mr. Goble had purchased. He testified that Patrolman Ahern, who was searching the passenger side floor board area, told him he had found a crack pipe and showed it to him along with a shopping bag filled with empty boxes of Sudafed. Officer Cindia testified that "there was no doubt" the pipe found was a drug pipe. He testified that a crack and meth pipe look the same.

{¶16} Officer John Ahern testified that on December 12, 2008, he was called to assist Patrolman Cindia and Sergeant Wilcox. He testified that he initially searched Joseph Belka and found some blister packets of cold medicine in his pockets. He stated

that he then searched the passenger side of the vehicle after Officer Cindia's drug dog alerted to it. He testified that he found a plastic bag underneath the passenger side of the car on the ground of the parking lot. The bag contained two empty boxes of cold medicine that were the same brand as the blister packs.

{¶17} Officer Ahern He testified that he found the pipe "directly under the passenger seat of the vehicle" about six inches back from the front of the seat. He testified that he observed white residue on the pipe when he found it. He testified the pipe was not tucked underneath anything or surrounded by anything on the floor. He testified that a front seat passenger would have access to the area of the seat where the pipe was found.

{¶18} Officer Ahern testified that the pipe could be a crack pipe or a meth pipe. He explained that the only way for anybody to know for sure what type of pipe it is would be through laboratory testing. He testified that residue would also have to be tested before knowing whether it was methamphetamine or cocaine.

{¶19} Mr. Goble testified that on December 12, 2008, he had driven his wife's automobile to Drug Mart. Mr. Goble testified that Joseph Belka was in the front passenger seat and John Belka was in the middle of the back seat while they were in the parking lot of Drug Mart. He explained that John Belka is his stepfather and Joseph is John's brother.

{¶20} Mr. Goble testified that they did not see the police until the police turned on their lights and came up behind his automobile. Mr. Goble testified that when the police pulled up, he saw Joseph Belka take a drug pipe out of his coat pocket and put it underneath the passenger's seat. He testified that Joseph Belka told him "if they find this

[pipe], it's mine" and he would "take the blame for it." Mr. Goble testified that he told the police at the scene that he saw Joseph put a pipe underneath the seat. He testified that John Belka did not move when the vehicle was pulled over.

{¶21} Mr. Goble testified that he was not using any drugs during December 2008. He testified that John Belka did not have a drug problem in December 2008. He testified that he was not surprised to see that Joseph Belka had a crack pipe.

{¶22} Mr. Jeffrey Houser testified that he has been employed as a forensic scientist at the Ohio Bureau of Criminal Identification & Investigation for nearly twenty-one years. Mr. Houser testified that on January 9, 2009, the Wadsworth Police Department submitted the glass drug pipe at issue for testing.

{¶23} Mr. Houser testified that he does not know with a reasonable degree of scientific certainty what residue is in a pipe based on initially looking at it. He testified that he first performed a color test which resulted in a "presumptive indication" that cocaine was present. He testified that he conducted a microcrystalline test second, which returned a positive confirmation for cocaine. Mr. Houser testified that the final test he performed, an instrument test, provided confirmatory results that the residue in the pipe was cocaine. He testified that he has tested thousands of pipes and that the drug pipe in this case contained cocaine.

{¶24} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of the charge of possession of cocaine were proved beyond a reasonable doubt. See *Jenks* at paragraph two of the syllabus. The State presented evidence that the pipe was found under the front passenger seat near the front of the seat, an area where a front seat passenger would have easy access to. The State presented evidence that Joseph Belka had been sitting in the front passenger seat of the

vehicle. The State presented the eyewitness testimony of the driver who saw Joseph Belka take the pipe from his pocket and put it under the front passenger seat. Tests conducted on the residue of the pipe showed that the residue was cocaine. Accordingly, there was sufficient evidence to establish that Belka knowingly possessed cocaine. This portion of Belka's assignment of error is overruled.

### Manifest weight of the evidence

**{¶25}** Officer Cindia testified that about twenty to thirty seconds elapsed from the time the occupants of the vehicle could have initially seen him when he entered the parking lot until the time he stopped the vehicle. He testified that it is possible that during those twenty to thirty seconds, the driver or someone in the back seat would have enough time to place a pipe under the front passenger seat. He conceded that he did not determine who had been in the vehicle twenty-four hours prior to the stop. Officer Cindia testified that he did not know the drug residue was cocaine without further testing.

**{¶26}** Officer Ahern testified that Joseph Belka was already out of the vehicle when he arrived at the scene, but he had been told that Joseph Belka was the front seat passenger. He testified he could not tell for sure what type of drug was in the pipe or whether the pipe was a meth or cocaine pipe. He testified that he initially thought the pipe he found was a meth pipe.

**{¶27}** Officer Ahern conceded that it is possible that a back seat passenger could have reached underneath the front passenger seat and placed the pipe in its location. He testified that a person walking in and sitting down in the vehicle would not have seen the pipe. He testified that there was stuff on the floor boards and that the vehicle was "closer to the dirty side."

**{¶28}** Mr. Goble testified that he had been living in the vehicle for a week. He testified that the vehicle was generally messy and needed to be cleaned if someone else was getting in the

vehicle. He testified that from the time he saw the police officer behind his vehicle until the officer was at his window was "pretty quick."

{¶29} Mr. Goble testified that he has used drugs before. He conceded that when he was being questioned, he initially told the police there was nothing illegal in the vehicle. He testified that after he gave a written statement to the police that the pipe belonged to Joseph Belka, he was not arrested and was able to go home.

{¶30} This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22.

{¶31} A thorough review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Belka, and there is no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Belka of possession of cocaine. The weight of the evidence supports the conclusion that Joseph Belka knowingly possessed the cocaine pipe. Two police officers testified that the drug pipe was found under the front passenger seat where Joseph Belka had been sitting. Mr. Goble testified that he saw Joseph Belka take a drug pipe from his pocket and put it under the front passenger seat. In addition, Mr. Goble testified that Joseph Belka told him the pipe was his and that he would take the blame if the police found it. Although there was conflicting testimony concerning the cleanliness of the vehicle, this does not outweigh the evidence of the pipe being found below Joseph Belka's seat and an eyewitness testifying that Joseph Belka placed it there. Mr. Goble testified that he was not using drugs in December 2008 and John Belka did not have a drug problem. Mr. Houser testified he used multiple tests to identify the residue in the pipe and all the test results indicated the residue was cocaine. Accordingly, Joseph Belka's conviction for

possession of cocaine is not against the manifest weight of the evidence. This portion of Belka's assignment of error is overruled.

## III.

**{¶32}** Belka's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, J.
BELFANCE, P. J.
CONCUR

APPEARANCES:

DAVID V. GEDROCK, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and RUSSELL A. HOPKINS, Assistant Prosecuting Attorney; for Appellee.