[Cite as *State v. Watts*, 2012-Ohio-5822.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 12CA0005 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DARRELL WATTS | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. CRB-11-10-01443 |

DECISION AND JOURNAL ENTRY

Dated: December 10, 2012

CARR, Judge.

{¶1} Appellant, Darrell Watts, appeals from the judgment of the Wayne County Municipal Court. This Court affirms.

I.

{¶2} On October 20, 2011, a complaint was filed in the Wayne County Municipal Court charging Darrell Watts with one count of violating a protection order in violation of R.C. 2919.27(A)(1), a first degree misdemeanor. Darrell's wife, Patricia, had obtained a protection order against him on September 7, 2011. The matter proceeded to a bench trial and Darrell was found guilty. Darrell was sentenced to a probation term of 12 months and ordered to pay a $250 fine plus court costs. The trial court's sentencing entry was journalized on December 29, 2011.

{¶3} Darrell filed a timely notice of appeal and raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

DEFENDANT-APPELLANT'S CONVICTION FOR VIOLATING A PROTECTION ORDER WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶4} In his first assignment of error, Darrell argues that his conviction for violating a protection order was not supported by sufficient evidence. This Court disagrees.

{¶5} In support of his first assignment of error, Darrell argues that the State failed to establish the mens rea element of recklessness in support of his conviction. Darrell emphasizes that after his wife obtained a protection order and moved out of the apartment they shared, she moved into an apartment that was only a block away. Darrell contends that he cannot be convicted of acting recklessly when he merely continued to live at his home after the protection order was issued.

{¶6} The law pertaining to a challenge to the sufficiency of the evidence is well settled:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*State v. Galloway*, 9th Dist. No. 19752, 2001 WL 81257 (Jan. 31, 2001), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶7} The test for sufficiency requires a determination of whether the State has met its burden of production at trial. *State v. Walker*, 9th Dist. No. 20559, 2001 WL 1581570 (Dec. 12, 2001); *see also State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997).

{¶8} The elements of violating a protection order are set forth in R.C. 2919.27(A)(1) which states, "No person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." "Recklessly" is defined as, "when, with heedless indifference to the consequences, [a person] perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C). At the time of the incident in this case, Darrell was the subject of a domestic violence civil protection order issued pursuant to R.C. 3113.31. The State presented the protection order as an exhibit at trial.

{¶9} The case stems from two incidents that occurred on October 14 and October 18, 2011. At the time of the incidents, Darrell was separated from his wife, Patricia. Patricia testified at trial that while she was still married to Darrell at the time of the incidents, she had obtained a five-year protection order against him on September 7, 2011. After she obtained the protection order, Patricia had moved in with her daughter, Debra Duncan, at an apartment located at 529 N. Buckeye Street in Wooster, Ohio. The testimony at trial reveals that as Patricia was getting ready to walk out the front door of her apartment to walk her dog on October 14, 2011, she observed Darrell riding his bicycle in front of her apartment. Patricia had lived with Darrell at an apartment located at 453 N. Buckeye Street prior to the time she obtained the protection order. Patricia testified that her current residence and her former residence were located on the same block. Patricia testified that she moved in with her daughter because she was afraid of Darrell and she did not have any other place to go. When Patricia observed Darrell on his bicycle, he was riding in the direction going away from Patricia's former apartment on the

opposite side of the street. Patricia testified that she had made Darrell aware of the fact that she was living in the apartment located at 529 N. Buckeye Street. Officer Corey Momchilov of the Wooster Police Department testified that he responded to the call on October 14, 2011, and made a report of the incident.

{¶10} On October 18, 2011, Patricia went to her old apartment to do some cleaning because the landlord had complained that it was in poor condition. Patricia testified that the apartment was "empty" at that time and that Darrell was no longer living there. Ms. Duncan, who accompanied Patricia to the apartment, testified that Darrell was not living on Buckeye Street as of the beginning of October. After Patricia and Ms. Duncan entered the apartment and began to clean, another tenant told them to "get out" because Darrell was across the street. Ms. Duncan testified that the tenant indicated Darrell was "sitting across the street on the steps." Ms. Duncan testified that Darrell was "[j]ust sitting there" and looking in the direction of the women when they exited the apartment. As the women continued to walk, Darrell rode his bike in the direction toward the apartment located at 529 N. Buckeye St. Ms. Duncan testified that Darrell followed them on the other side of the street as they walked back to the apartment. Patricia testified that as Darrell made his way down the street, he "kept looking back to see if anybody was watching him."

{¶11} Patricia returned to the apartment at 529 North Buckeye Street and called the police. Officer Fatzinger, who responded to the call on October 18, 2011, testified that he measured the distance from the sidewalk in front of 529 North Buckeye Street across the road to the sidewalk where Darrell had been seen. Officer Fatzinger testified that the distance was "approximately 55 feet." Officer Fatzinger testified that Patricia had obtained a protection order against Darrell on September 7, 2011, that would remain in effect until September 15, 2016.

When presented with the protection order, Officer Fatzinger testified that it read, "[Darrell Watts] shall stay away from [Patricia Watts] and all other persons named in this order and not be present within 500 feet of any protected persons wherever those protected persons may be found or any place where [Darrell] knows or should know the protective persons are likely to be even with [Patricia's] permission." The protection order further read, "[Darrell Watts] shall not initiate or have any contact with the protected persons named in this order or their residence, business, place of employment, schools, daycare centers, or health care providers."

{¶12} The aforementioned evidence, when construed in the light most favorable to the State, was sufficient to convict Darrell Watts of violating a protection order. On two separate occasions Darrell rode his bike past the apartment where Patricia was living. Patricia testified that she had made Darrell aware of the fact that she was living at 529 N. Buckeye St. Officer Fatzinger testified that the spot where Darrell was seen on the sidewalk across the street was "approximately 55 feet" from the sidewalk in front of Patricia's new apartment. During the October 18 incident, Darrell waited outside the apartment located at 453 N. Buckeye St., and when Patricia and Ms. Duncan exited, Darrell followed Patricia up the street as she made her way back to her new apartment. Moreover, there was testimony at trial that Darrell was no longer living at 453 N. Buckeye St. as of the beginning of October, and therefore would not have had reason to be in that general area. This evidence, when construed in the light most favorable to the State, was sufficient to establish that Darrell was reckless in violating the terms of the protection order.

{¶13} The first assignment of error is overruled.

6

## ASSIGNMENT OF ERROR II

DEFENDANT-APPELLANT'S CONVICTION FOR VIOLATING A PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} In his second assignment of error, Watts argues that his conviction for violating a protection order was against the manifest weight of the evidence. This Court disagrees.

{¶15} In support of his second assignment of error, Watts contends that the weight of the evidence suggests that he was not reckless in violating the terms of the protection order. Watts argues that the evidence is undisputed that he did not threaten or speak with Patricia during the time frame in question, and the only reason he even saw Patricia is that she chose to move only a couple of houses away despite the fact that she knew he was still living in their old apartment at 453 N. Buckeye St. Watts contends that his conviction under these circumstances was a manifest miscarriage of justice.

{¶16} A determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, ¶ 11. Rather,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

> Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

{¶17} Darrell testified in his own defense at trial. Darrell testified that he lived at the apartment located at 453 N. Buckeye St. in Wooster at the time of the alleged incidents in this case and up until November 4, 2011. While he was served with the protection order at a different address in Wooster, Darrell indicated that he used his brother's mailing address "for legal purposes only" to ensure that he would not miss any court dates. Darrell explained that he began that practice because of prior legal matters separate from this case. Darrell asserted it is possible Patricia saw him on N. Buckeye St. on the dates in question because he was living on that street at the time. Darrell also noted that he used his bicycle as a mode of transportation because he did not have a car. In regard to the incident where Patricia and Debra Duncan went to clean the apartment at 453 N. Buckeye St., Darrell testified that the event actually occurred on October 16, 2011, which was a Sunday. Darrell testified that he was in a rush to watch football with his brother that day when he pulled up on his bicycle and saw Patricia and Ms. Duncan exiting the apartment with a vacuum cleaner. In order to avoid the women, Darrell waited until they left before he entered his apartment. Darrell testified that he did not say anything to the women. Darrell testified that his belongings were still in the apartment at that time as he had yet to move out. Darrell further indicated that he was surprised to see the women in his apartment, and that Patricia failed to tell his landlord that there was a protection order against him. When asked if he was aware of where Patricia was staying, Darrell answered that he "assumed she went to stay with Debbie Duncan."

{¶18} A review of the entire record suggests that the weight of the evidence supports the trial court's conclusion that Darrell acted recklessly in violating the protection order. Darrell's testimony at trial sharply conflicted with the testimony of Patricia and Ms. Duncan on several key issues, namely whether Darrell was still living at the apartment at 453 N. Buckeye St. at the

time of the second incident. We note that the trier of fact was in the best position to evaluate the credibility of witnesses, and this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge simply because the trial court chose to believe certain witnesses' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Because the protection order contained distance provisions, the mere fact that Darrell did not speak to or threaten Patricia is not dispositive of whether he violated the order. Patricia and Ms. Duncan testified that Darrell was not living at 453 N. Buckeye St. on the day they went to clean the apartment. Patricia specifically testified that the apartment was "empty" when they went to clean it. Significantly, in addition to riding his bicycle past the apartment located at 529 N. Buckeye St. on the first occasion, there was testimony that on the day the women went to clean the apartment located at 453 N. Buckeye St., Darrell followed them as they attempted to return home after learning he was across the street. In light of the testimony of Patricia, Ms. Duncan, and the police officers, we cannot conclude that this is the exceptional case where the trial court clearly lost its way.

{¶19} The second assignment of error is overruled.

III.

{¶20} Watts' assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

BRIAN L. SUMMERS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.