[Cite as *State v. Zurschmit*, 2015-Ohio-4355.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
| --- | --- |
| STATE OF OHIO | C.A. No. 27370 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PAUL R. ZURSCHMIT | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2013 07 1869 |

DECISION AND JOURNAL ENTRY

Dated: October 21, 2015

CARR, Judge.

{¶1}   Appellant Paul Zurschmit appeals his conviction in the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}   Zurschmit was indicted on two counts of vandalism, one count of menacing by stalking, one count of criminal trespass, and one count of burglary.  At the conclusion of trial, the jury found him not guilty of one count of vandalism, but guilty of the remaining four charges. For purposes of sentencing, the trial court merged the count of vandalism into the burglary and imposed an aggregate term of imprisonment for three years on the remaining three offenses. Zurschmit appealed and raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

APPELLANT'S CONVICTION FOR BURGLARY WAS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW.

{¶3} Zurschmit argues that his burglary conviction was not supported by sufficient evidence. This Court disagrees.

{¶4} "Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 113, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Diar* at ¶ 113, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶5} Zurschmit was convicted of burglary in violation of R.C. 2911.12(A)(3) which states: "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * *, with purpose to commit in the structure * * * any criminal offense." "Force" is satisfied by "any effort physically exerted." *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, ¶ 18 (9th Dist.). A criminal trespass occurs when one "without privilege to do so * * * [k]nowingly enter[s] or remain[s] on the land or premises of another[.]" R.C. 2911.21(A)(1). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶6} In this case, the criminal offenses underlying the burglary were limited to vandalism and/or theft. One commits vandalism by "knowingly caus[ing] serious physical harm to an occupied structure or any of its contents." R.C. 2909.05(A). For purposes of the vandalism

statute, "serious physical harm" is defined as "physical harm to property that results in loss to the value of the property of one thousand dollars or more." R.C. 2909.05(F)(2). An "occupied structure" includes "any house * * * to which any of the following applies: (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present[;] (2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present[;] (3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present[; or] (4) At the time, any person is present or likely to be present in it." R.C. 2909.01(C).

{¶7} A person commits a theft when "with purpose to deprive the owner of property or services, [he] knowingly obtain[s] or exert[s] control over either the property or services" of another without the owner's consent, beyond the scope of the owner's consent, or by deception, threat, or intimidation. R.C. 2913.02(A)(1)-(5).

{¶8} At trial, Jeffrey Gardner testified regarding an acrimonious relationship between Zurschmit and himself stemming from both men's relationship with Mr. Gardner's girlfriend Melissa McClain. After living in Zurschmit's mother's home, Ms. McClain moved in with Mr. Gardner, at which time the harassment by Zurschmit escalated against Mr. Gardner. For example, in April 2013, Zurschmit was captured on Mr. Gardner's vehicle's security camera throwing a rock at the windshield and spewing profanity. On May 30, 2013, after rain water was pouring through his ceiling into his home, Mr. Gardner climbed up on his roof and discovered that 150 holes had been drilled in the roof. Mr. Gardner initially suspected a roofing contractor with whom he had a dispute, but later suspected Zurschmit based on the tension and subsequent confrontations between the two men.

{¶9} At approximately 3:00 a.m. on June 2, 2013, Mr. Gardner and Ms. McClain returned home after a typical Saturday evening at a nightclub to find significant damage to the home. A bedroom window air conditioning unit had been pulled out and was lying on the ground. Inside the home, there was water damage everywhere: faucets were spewing water, the toilet had been rigged to spray water, the waterbed had been sliced open, and a garden hose had been run through the bedroom window and turned on. All of the home's remote controls had been placed in either the toilet or a sink full of water. In addition, a fire extinguisher had been sprayed throughout the home and Mr. Gardner's car. The next day, Mr. Gardner climbed up on the roof and discovered that 64 more holes had been drilled through the tarp the insurance company had used to cover the prior 150 holes. In taking inventory of his belongings, Mr. Gardner discovered that his wallet, computer, backup hard drive, DirecTV box, and a hard drive for his home security system had been taken. However, none of Ms. McClain's property was taken or damaged. Mr. Gardner immediately suspected Zurschmit based on recent harassment.

{¶10} In mid-June, after the invasion and vandalism of Mr. Gardner's home, Mr. Gardner waited nearby as Ms. McClain approached Children Services Board for visitation with her children. Zurschmit lived near the agency. Mr. Gardner testified that he saw Zurschmit approach Ms. McClain, but that he quickly ran away as Mr. Gardner approached. Ms. McClain testified that Zurschmit approached her in the agency parking lot and taunted, "Hey, Missy, I heard something happened at your boy's house." When Ms. McClain asked him what he knew, Zurschmit told her that he was at Mr. Gardner's house at the time, sitting at a picnic table in the backyard, watching as three men pulled an air conditioning unit out of a window which they then entered. Zurschmit told Ms. McClain that he saw the three men throw pillow cases out the window and then exit through a door, leaving the door open. Zurschmit told Ms. McClain that

he walked up to the house and closed the door because he did not want Mr. Gardner's cats to escape.

{¶11} On June 25, 2013, Zurschmit called Mr. Gardner's cell phone. Ms. McClain testified that she was sitting beside Mr. Gardner at the time and was able to overhear the entire conversation. Mr. Gardner recorded the conversation and gave the recording to the police. The State played the recording of the conversation in court. A man's voice, which Mr. Gardner testified was not his, can be heard on the recording making "drill" sounds and saying that he had moved on to drilling holes. Detective Michael Hitchings of the New Franklin Police Department testified that, during his involvement in the case, Zurschmit admitted to having called Mr. Gardner after the incident.

{¶12} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of the charge of burglary were proved beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The State presented evidence that Zurschmit was on Mr. Gardner's property without permission at the time of the burglary. The evidence demonstrated that the intruder gained entrance to the home after forcibly removing an air conditioning unit from a bedroom window, and further entered a closed garage and Mr. Gardner's car. Significant water damage was inflicted inside the home, additional holes were drilled in the roof, multiple items were stolen from the home, and the entire interior of Mr. Gardner's car and much of his house was sprayed with a fire extinguisher. Given Zurschmit's admission to being on Mr. Gardner's property at the time of the commission of the burglary, coupled with prior acts of aggression and subsequent taunts towards Mr. Gardner, the trier of fact could have reasonably inferred that Zurschmit committed the offense. Zurschmit's first assignment of error is overruled.

## **ASSIGNMENT OF ERROR II**

APPELLANT'S CONVICTION FOR BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶13}** Zurschmit argues that his burglary conviction was against the manifest weight of the evidence. This Court disagrees.

**{¶14}** This Court recognizes:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

**{¶15}** This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

**{¶16}** Robert Randolph, records custodian and technical support analyst for Verizon Wireless testified that Mr. Gardner's cell phone number logged a four-minute call on June 25, 2013, at 11:23 p.m. Mr. Gardner verified his cell phone number and testified that that call was the conversation he had with Zurschmit after the burglary and during which Zurschmit taunted Mr. Gardner about the damage done to his home on June 2, 2013. In the recorded call, Zurschmit can be heard admitting that he was at Mr. Gardner's house on the night of the burglary

and commenting on the amount and type of damage inflicted during the burglary. Included in his taunts was his comment that he had moved on from other activities involving Mr. Gardner to drilling holes. Zurschmit then twice made a drilling noise. He can further be heard threatening future damage to Mr. Gardner's property.

{¶17} On June 29, 2013, after the burglary and above-referenced phone call from Zurschmit, Mr. Gardner and Ms. McClain stayed home instead of going out for their usual date night clubbing. Mr. Gardner turned out all the lights in his home except for the bedroom, which was not visible from outside the house, to make it appear as though no one was home. He had installed a new 15-camera security system which he monitored that evening. At 11:19 p.m., Mr. Gardner saw something on one of the security system monitors. He recognized Zurschmit prowling around the property. Ms. McClain called the police and waited with Mr. Gardner for them to arrive. Mr. Gardner gave his video footage to the police.

{¶18} Detective Hitchings testified that the police attempted to take fingerprints from the scene after the June 2 burglary, but that the excessive water made that impossible. The only fingerprint the police found was too smudged to identify the person who left it. Detective Hitchings further testified that there were no attempts to match the only shoe print found outside the house to Zurschmit's shoes. Nevertheless, Zurschmit had admitted multiple times to multiple people that he had been at the scene of the burglary as it occurred.

{¶19} A thorough review of the record indicates that this is not the exceptional case where the evidence weighs heavily in favor of Zurschmit. The weight of the evidence supports the conclusion that Zurschmit, who had displayed acts of animosity and aggression toward Mr. Gardner and his property both before and after the June 2, 2013 burglary, committed the offense. Zurschmit was admittedly on Mr. Gardner's property that evening without permission. Entrance

to the property was accomplished after an air conditioning unit was forcibly removed from a window. Although he claimed to have witnessed other men breaking into Mr. Gardner's home and throwing items out the window, Zurschmit did not call 911 or report the incident to the police. Zurschmit subsequently conveyed information to both Mr. Gardner and Ms. McClain regarding the extensive damage to the contents of the home and the roof that only the perpetrator would reasonably know. For example, during his taunting call to Mr. Gardner after the burglary, Zurschmit referenced water damage inside the home and made drilling noises. In addition, a few weeks after the burglary and mere days after Zurschmit's taunting phone call to the victim, Mr. Gardner captured video images of Zurschmit wandering around on his property on a night that Mr. Gardner and Ms. McClain would normally be out of the house. Based on the evidence, this Court cannot conclude that the jury lost its way in finding that Zurschmit used force, stealth, or deception to trespass in the victim's home with purpose to vandalize and/or commit theft. Accordingly, Zurschmit's burglary conviction is not against the manifest weight of the evidence. Zurschmit's second assignment of error is overruled.

## III.

{¶20} Zurschmit's assignments of error are overruled. This judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

NICHOLAS SWYRYDENKO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.