[Cite as *State v. Kanner*, **2011-Ohio-6198.**]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 10CA0131-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARK M. KANNER | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 10-CR-0207 |

DECISION AND JOURNAL ENTRY

Dated: December 5, 2011

CARR, Presiding Judge.

**{¶1}** Appellant, Mark Kanner, appeals his conviction in the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** On May 19, 2010, Kanner was indicted on one count of trafficking in a counterfeit controlled substance in violation of R.C. 2925.37, a felony of the fifth degree; and one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(a), a felony of the fifth degree. He pleaded not guilty to the charges at arraignment. The matter proceeded to trial. At the conclusion of trial, the jury found Kanner not guilty of trafficking in a counterfeit controlled substance and guilty of trafficking in cocaine. The trial court sentenced Kanner accordingly. Kanner filed a timely appeal, raising one assignment of error for review.

II.

## ASSIGNMENT OF ERROR

"THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT[] OF 'GUILTY' AS TO THE CHARGED TRAFFICKING IN DRUGS (COCAINE) COUNT OF THE INDICTMENT, AND DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶3} Kanner argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. This Court disagrees.

{¶4} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 279.

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.

{¶5} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to

the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

> "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶6} Kanner was charged with trafficking in cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(a), which states, in relevant part: "No person shall knowingly *** [s]ell or offer to sell [cocaine]." R.C. 2901.22(B) states: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Sufficiency of the evidence

{¶7} At trial, Agent Donald Hahn of the Medway Drug Enforcement Agency ("Medway"), a covert organization, testified that the agency uses confidential informants to buy drugs from suspected drug traffickers. Agent Hahn explained that confidential informants generally have criminal histories which facilitate their covert activities within the criminal

culture. He testified that confidential informants are compensated either financially or by being allowed to "work[] off" pending criminal charges. Agent Hahn further testified as to the rules and procedures relevant to the use of confidential informants as follows. Confidential informants are prohibited from using drugs, carrying weapons, coercing others to sell drugs, and breaking any other laws. They must maintain contact with their controlling agents during undercover operations. Confidential informants are searched immediately prior to and after a covert drug purchase to ensure that the informants have no weapons, or additional money or drugs. They are also equipped with an audio wire for safety and to allow the controlling agents to monitor and record the transactions. Agent Hahn testified that it is not unusual for participants involved in illicit drug transactions not to speak or to speak in code.

{¶8}  Agent Hahn testified that Medway employed Aaron Sudyk as a confidential informant for purposes of Kanner's case. He testified that all proper procedures were followed when Sudyk engaged in an undercover drug transaction with Kanner on January 7, 2010. The substance that Sudyk purchased from Kanner tested positive for cocaine during a field test.

{¶9}  Aaron Sudyk testified that he was employed as a confidential informant for Medway when he told his controlling agent that he thought he could buy drugs from Kanner. Sudyk described Kanner as a "bar friend, acquaintance" for approximately one year. Sudyk testified that, on January 7, 2010, he arranged to meet Kanner to buy drugs. After being searched and wired for sound, Sudyk waited for Kanner at a Circle K store. Video surveillance captured Sudyk and Kanner separately entering the store. Sudyk's audio wire captured the two men greeting one another and agreeing to meet in the back of the store by the beer coolers. Sudyk testified that he gave Kanner $100 and that Kanner gave him a small plastic bag of

cocaine. He testified that he turned the drugs over to his controlling agent, Agent McCann, immediately upon leaving the store and entering her vehicle.

{¶10} Sudyk acknowledged that he never specifically mentioned drugs during his conversations with Kanner before and during the transaction. He further admitted that he has prior felony convictions for which he served two prison terms. He admitted that he works as a confidential informant because his criminal history makes it difficult for him to find alternate employment. Sudyk testified, however, that he looks at the situation as a way to turn his negative history into a positive, legal career.

{¶11} Medway Agent James Ascherel testified that he is in charge of technical surveillance. He testified that he recorded Kanner as he arrived to meet Sudyk at the Circle K on January 7, 2010. Agent Ascherel testified that he found Kanner's actions unusual. He testified that Kanner parked in the lot of a KFC restaurant, but not near the door. He testified that Kanner then walked across the street to the Circle K, entered, and left the store shortly thereafter. Agent Ascherel testified that Kanner never entered KFC, but drove away immediately after leaving the Circle K. The agent found Kanner's actions particularly odd given that it was very cold and snowing at the time.

{¶12} Medway Agent Therese McCann testified that she was Sudyk's controlling agent when he worked as a confidential informant for the agency. She testified that she was with Sudyk when he made a controlled phone call to Kanner to arrange to purchase drugs on January 7, 2010. She testified that Sudyk was searched, wired, and given $100 of "controlled buy money," i.e., bills which had been photocopied for identification. She dropped Sudyk off at the front door to the Circle K and watched him enter. She testified that she saw Kanner enter the Circle K after leaving a vehicle registered to Wanda Kanner, who the agent assumed was

Kanner's mother. Agent McCann testified that Sudyk exited the Circle K approximately one minute later, entered her vehicle, and turned a packet of cocaine over to her. She testified that she and Sudyk drove to their designated secure location where Agent Hahn field tested the substance which tested positive for cocaine. Agent McCann testified that she then placed the drugs in an evidence envelope for future laboratory testing.

{¶13} Agent McCann testified that there is no standard operating procedure for counting out money during an undercover drug purchase. She testified, however, that Medway prefers that its confidential informants merely say, "Here's the money[,]" "Thanks[,]" or "Good looking out" to indicate that the sale has been completed. She testified that Kanner was never "busted" immediately after the sale, so there is no record of his having any controlled money on his person.

{¶14} Keith Taggart, a chemist with the Bureau of Criminal Identification and Investigation ("BCI"), testified that he tested the substance received by the confidential informant on January 7, 2010. It weighed .85 grams. Mr. Taggart testified that both a color test and gas chromatograph mass spectrometer test verified that the substance was cocaine. He testified that the tests utilized are readily accepted within the field and that the results are accurate within a reasonable degree of scientific certainty.

{¶15} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found that the essential elements of the charge of trafficking in cocaine were proved beyond a reasonable doubt. See *Jenks* at paragraph two of the syllabus. The State presented evidence that Medway utilized the services of a confidential informant pursuant to proper procedures and safeguards to facilitate a controlled drug buy on January 7, 2010. The evidence demonstrates that Sudyk arranged a meeting with Kanner, that

the two met very briefly, and that Sudyk returned to his controlling agent with a substance that tested positive for cocaine. Accordingly, there was sufficient evidence to establish that Kanner knowingly sold cocaine to the confidential informant.

Manifest weight of the evidence

{¶16} Kanner testified in his own defense. He admitted spending time with Sudyk at bars, giving him rides, visiting his home, and lending him some money to pay a bar tab on one occasion. He denied selling drugs to Sudyk.

{¶17} Kanner testified that Sudyk asked to meet him on December 29, 2009, to give him some money for gas in exchange for the many rides he had received. Kanner believed that Sudyk owed him $15. The two met briefly at a bar where Sudyk gave him $35 and left quickly. Kanner testified that he was confused by the extra money, so he called Sudyk the next day. Kanner testified that Sudyk told him he had gotten a good job and not to worry about it.

{¶18} Kanner testified that Sudyk contacted him again on January 7, 2010, requesting to meet so Sudyk could repay him for lending Sudyk money for a bar tab. Kanner testified that he planned to get something to eat at KFC and suggested that the two meet there, but Sudyk insisted on meeting at Circle K. Kanner admitted parking in the KFC lot and walking to the Circle K. He testified that he greeted Sudyk inside and then walked to the beer cooler where Sudyk directed him to meet with him. Kanner testified that Sudyk gave him the $20 he owed, plus an additional $55, and left quickly. Kanner testified that he bought some beer and returned to his car but that he was too "shocked" and "distraught" to buy food at KFC as he originally planned. Kanner testified that he tried to call Sudyk to ask about the additional money, but Sudyk did not answer his call. Kanner testified that he then drove to Sudyk's home and left the additional

money under an empty forty-ounce beer bottle near the trash for Sudyk. He again denied selling any drugs to Sudyk.

{¶19} This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22.

{¶20} A review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Kanner. A thorough review of the record compels this Court to find no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Kanner of trafficking in cocaine.

{¶21} The weight of the evidence supports the conclusion that Kanner knowingly sold cocaine to the confidential informant. Kanner admitted receiving a large sum of money from Sudyk, although he denied selling any drugs to Sudyk. The evidence demonstrates that Kanner agreed to meet with Sudyk, that Sudyk had money but no drugs on his person before the two met, that the two met for approximately a minute, and that Sudyk was immediately searched by a Medway agent after the meeting. The evidence demonstrates that Sudyk no longer had any money but had a small packet of cocaine after his brief meeting with Kanner. Accordingly, his conviction for trafficking in cocaine is not against the manifest weight of the evidence. Kanner's sole assignment of error is overruled.

## III.

{¶22} Kanner's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.